FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

OCT 10 2006

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

CHRIS LOWRY, by, through, and with                          PLAINTIFFS
his Mother WENDY CROW;
COLTON DOUGAN, by, through, and with
his Father FRANK DOUGAN
and his Mother LEIGH DOUGAN; and
MICHEAL JOSEPH, by, through, and with
his Mother HEIDI JOSEPH

VS.                        CIV. NO. __5-06__ C V 0 0 0 0 0 2 6 2  JLH.

WATSON CHAPEL SCHOOL DISTRICT;                              DEFENDANTS
CHARLES DANIEL KNIGHT, WATSON CHAPEL
SCHOOL DISTRICT SUPERINTENDENT,
in his Individual and Official Capacities ; and
WATSON CHAPEL SCHOOL BOARD
PRESIDENT CHARLES DANIEL;
VICE PRESIDENT SANDRA C. BOONE;
SECRETARY DONNIE HARTSFIELD; and
MEMBERS DANNY HOLCOMB; JIM JOHNSON;
MAXINE NELSON; and JOHN TREGLOWN,
In their Individual Capacities

**PLAINTIFFS' BRIEF IN SUPPORT OF THEIR
MOTION FOR PRELIMINARY INJUNCTION**

The plaintiffs claim in this lawsuit that Defendants' have violated rights

guaranteed to them by the First and Fourteenth Amendments to the United

States Constitution. The plaintiffs have asked this Court for a preliminary

injunction prohibiting the defendants from disciplining them for wearing their

black armbands in protest of the Defendants' actions and policies, and for

other relief as the Court deems equitable and just.

## I. BACKGROUND

### A. The policy and action at issue

Defendants have established a uniform policy for the WCSD that prohibits any "towel, scarf, bandana, do-rag, shirt, string, chain, jewelry, special button, insignia, label, marking, different-colored stitching, fringe, brad, stud, picture, logo, ribbon, embroidery, initials, monogram, special buckle, or any other form of adornment" from being "worn on or over any part of the uniform, except the school name, school logo, or school insignia." Ex. E, Student Apparel, ¶ 14.

Plaintiff students wore black armbands to school to protest the school's uniform policy and its manner of enforcing the policy. Plaintiffs did not wear the armbands on or over any part of the school uniform, and were not in violation of the uniform policy. Ex. B, ¶ 5; Ex. C, ¶ 5; Ex. D, ¶¶ 5-6. Nonetheless, the Plaintiff students and other students were punished by the Defendants for wearing their black armbands. Ex. A, ¶¶ 10. 12.

Plaintiffs seek an injunction prohibiting Defendants from enforcing any discipline already imposed because of their wearing of the armbands, and ordering Defendants to remove any reference to such discipline from the students' academic records, allow the students to make up any tests, homework, or other work they missed because of such discipline, and prohibiting any future discipline of them for exercise of these rights.

## **B.   Plaintiffs**

Plaintiff Chris Lowry ("Lowry") is fifteen years old and an eighth grade student at Watson Chapel Junior High School. Ex. B, ¶1. He was disciplined for wearing a solid black lanyard to hold his school identification tag instead of the school-issued yellow and black lanyard which says "Watson Chapel Wildcats," although the school uniform policy does not specify what type of lanyard may be worn. Ex. B, ¶ 2; Ex. E, ¶ 9.F.b. Lowry and his mother, Wendy Crow ("Crow") disagree with the school's uniform policy and the manner in which it is being enforced. Ex. A, ¶ 2; Ex. B, ¶ 3. Crow and other like-minded parents of students in the WCSD distributed over 206 black armbands that Crow had made for the students to wear to protest the uniform policy. Ex. A, ¶¶ 4-5.

The day before the students were set to wear the armbands, Crow learned that Watson Chapel High School officials had announced that any student wearing a black armband to school would be suspended from school for three days, and that they would miss their mid-term tests and that Watson Chapel Junior High School officials announced that anyone wearing an armband would be punished "accordingly." Ex. A, ¶ 7. Many parents of WCSD students did not allow their children to wear the armbands to school because they were afraid of the consequences for their children. Ex. A, ¶ 8; Ex.

On Friday, October 6, 2006, the planned armband protest day, Lowry went to school, wearing his black armband. Ex. B, ¶ 5. As soon as he stepped foot on campus, he was sent to the Principal's office and then to the library,

- 3 -

where armed police officers supervised Lowry and about 24 other students. Ex. B, ¶ 7. Lowry waited in the library under supervision of the armed officers with other students until each student was called to the Principal's office. Ex. B, ¶¶ 7-8. Lowry was the last student called to the Principal's office, and it was during the third period hour. Ex. B, ¶ 8. The Principal confiscated Lowry's armband, and gave him a disciplinary slip for a one day suspension. Ex. B, ¶ 9 and attachment thereto. He was sent to in school suspension until his mother arrived to pick him up. Ex. B, ¶ 10.

Plaintiff Colton Dougan ("Dougan") is fourteen years old and a ninth grade student at Watson Chapel Junior High School. Ex. C, ¶ 1. He disagrees with the uniform policy and its enforcement, and wore a black armband to school on Friday, October 6, 2006, to demonstrate his views. Ex. C, ¶¶ 3-6. The armband was not on the uniform, but was on his arm. Ex. C, ¶ 5. Dougan observed many students taking their armbands off before school and hiding them because they had heard that students were being suspended. Ex. C, ¶¶ 17-18.

A teacher saw Dougan's armband during his third period class, which is just before lunch, and she sent him to the Principal's office. Ex. C, ¶¶ 7-9. The Principal asked Dougan where he had gotten the armband, and Dougan told him he had gotten it from his parents. Ex. C, ¶ 10. The Principal confiscated Dougan's armband and called Dougan's parents. Ex. C, ¶ 11. Dougan had no previous violations of the uniform policy or disciplinary slips for any reason until he was disciplined for wearing his black armband. Ex. C

- 4 -

¶¶ 2, 13-14. Everyday, Dougan wears a white bracelet which reads "Live Pure: 1 Timothy 4:12" and this has not been a violation of the uniform policy. Ex. C, ¶ 19. Dougan can no longer be a member of Beta Club due to the discipline he received for wearing his black armband. Ex. C, ¶¶ 11-15.

Plaintiff Micheal Joseph ("Joseph") is sixteen years old and a tenth grade student at Watson Chapel High School. He had not received any violations of the uniform policy until October 6, 2006, when he wore his armband to protest the uniform policy. Ex. D, ¶¶ 2-5. He was standing in the parking lot before school the morning of Friday, October 6, when the Assistant Principal ordered him to go to the auditorium and wait. Ex. D, ¶¶ 5-8. Joseph waited in the auditorium with other students for two class periods, until a different Assistant Principal called Joseph outside the auditorium. Ex. D, ¶ 8. The Assistant Principal handed Joseph a "Uniform Violation Report" and told him he was being suspended for one day for wearing his black armband. Ex. D, ¶ 9. Joseph was not given a written warning as required by school policy. Ex. D, ¶ 10. Joseph and the other student Plaintiffs would like to wear their armbands to protest the policy and its enforcement and not face discipline for it. Ex. B, ¶ 11; Ex. C, ¶ 16; Ex. D, ¶ 12.

## II. ARGUMENT

There are four factors to be considered as to whether a preliminary injunction should issue: (1) the likelihood that the moving party will succeed on the merits; (2) the threat of irreparable harm to the movant in the absence of the requested injunction; (3) the balance between the harm to the moving

party if the injunction is denied and any harm to other parties if the injunction is granted; and (4) the public interest.  <u>United Indus. Corp. v. Clorox Co.</u>, 140 F.3d 1175, 1178-79 (8th Cir. 1998); <u>Dataphase Sys. v. CL Sys., Inc.</u>, 640 F.2d 109, 114 (8th Cir. 1981) (en banc).  When applying the <u>Dataphase</u> factors, "a court should flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene." <u>Clorox</u>, 140 F.3d at 1179.  As explained below, the balance weighs heavily in the plaintiffs' favor on each of the four factors.

### A. Likelihood of Success

There are three categories of student speech governed by the Supreme Court:  (1) student speech on school premises;[1] (2) school sponsored speech;[2] and (3) obscene or "plainly offensive speech."[3]  Armband protests are clearly student speech on school premises and subject to <u>Tinker</u> analysis.  <u>Id.</u>; <u>Bystrom v. Fridley High School</u>, 822 F.2d 747 (8th Cir. 1987)(the "First Amendment gives a high school student the classroom right to wear Tinker's armband.")

In finding school officials could not ban students from wearing black armbands in protest of the Vietnam War, the Supreme Court held in <u>Tinker</u> that such expression or speech could not be prohibited merely because school officials had an "urgent wish to avoid the controversy which might result from the expression," <u>Tinker</u>, 393 U.S. at 510; because other students made hostile

---

[1] <u>Tinker v. Des Moines Independent Community School Dist.</u>, 393 U.S. 503 (1969).

[2] <u>Hazelwood School Dist. v. Kuhlmeier</u>, 484 U.S. 260, 271, 273 (1988).

[3] <u>Bethel School Dist. No. 403 v. Fraser</u>, 478 U.S. 678 (1986).

remarks to those students wearing armbands, Id. at 508; because students argued in classrooms about the issue rather than paying attention; Id. at 518 (Black, J., dissenting); or because student reactions to the black armbands might lead other students to cause a disturbance or initiate an argument or other violence, Id. at 508. In short, "undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression." Id. Indeed, the Supreme Court specifically restricted school officials' authority to restrict student expression only to circumstances where the speech or expression would interfere greatly with schoolwork or the school's ability to discipline. Id. at 511.

The student Plaintiffs have a clearly established right under the First Amendment to express themselves in an armband protest. Wearing political messages to protest government policies or express one's point of view by use of armbands, political buttons, logos, and choice of clothing are all forms of student speech protected by the First Amendment. Tinker, Saxe v. State Coll. Area School Dist., 240 F.3d 200, 311 (3d. Cir. 2002); Sypniewski v. Warren Hills Regional Bd. of Educ. 307 F.3d 243 (3d Cir. 2002)(t-shirts); Chandler v. McMinnville School Dist., 978 F.2d 524 (9th Cir. 1992)(political buttons); see also Jeglin v. San Jacinto Unified School Dist., 827 F.Supp. 1459 (C.D. Cal. 1993); Castorina ex rel. Rewt v. Madison County School Bd., 246 F.3d 536, 539 (6th Cir. 2001).

Defendants must tolerate this student expression and cannot prohibit the speech or discipline or otherwise punish students for it unless it can

reasonably forecast that the expression will "materially and substantially interfere with the requirements of appropriate discipline in the operation of the school." Bystrom, 822 F.2d at 754 (citing Tinker, 393 U.S. at 509). Wearing armbands is, as a matter of law, "a silent, passive expression of opinion, unaccompanied by any disorder or disturbance." Id. at 508.

Before the Plaintiff students even wore their armbands, the Defendants announced that anyone who wears an armband would be disciplined. Defendants placed a prior restraint on Plaintiffs' freedom of expression, which is subjected to the highest degree of scrutiny for constitutionality. Henerey v. City of St. Charles, 200 F.3d 1128, 1134 (8th Cir. 1999)(citing Near v. Minnesota ex. rel. Olson, 283 U.S. 697, 713-20 (1931)). Defendants simply are unable to meet their burden to justify their actions in this case. See Bystrom, 822 F.2d at 755. The Defendants have no basis in fact or law from which they could reasonably conclude that school activities would be disrupted by students wearing armbands. There was no disruption at the schools due to the armbands, save disruptions of Defendants' own making in enforcing the prohibition on armbands by suspending or otherwise disciplining participating students. Ex. C, ¶ 8.

It is a bedrock principle of the First Amendment that the government may not punish a person simply because it disapproves of the person's speech. R.A.V. v. City of St. Paul, 505 U.S. 377 (1992); Texas v. Johnson, 491 U.S. 397, 414 (1989); Bose Corp. v. Consumers Union of United States, Inc., 466 U.S. 485, 505 (1984); Police Dept. of Chicago v. Mosley, 408 U.S. 92, 95 (1972).

Paragraph 17 of the Defendants' uniform policy provides that, "[a]ny attempt to defeat the uniformity intended by this policy is prohibited." Ex. E. That uniformity is not defeated by armbands and necklaces, as these items have been allowed by the Defendants under this uniform policy. Dougan wears a bracelet ever day, and Lowry wears two necklaces; wearing of these adornments have not been violations of the policy. Ex. B, ¶ 12; Ex. C, ¶ 19. It is clear that by prohibiting these black armbands, Defendants have punished these students' expression of their disapproval of the policy and its manner of enforcement because of the content of the students' message. This is in clear violation of the students' First Amendment rights.

The student Plaintiffs were disciplined and suspended from school solely because the Defendants disapproved of their speech. Other students who wanted to wear black armbands did not do so because of the Defendants' threats. Ex. A, ¶¶ 7-8; Ex. C, ¶¶ 17-18. Silencing disfavored speech or chilling the speech of others through *in terrorem* application of school discipline is exactly what the First Amendment seeks to prevent. Plaintiffs have a high probability of success on the merits.

## B. Threat of Irreparable Harm to the Plaintiffs

In this case, the irreparable nature of the threatened injuries to the plaintiffs is obvious. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976). Plaintiffs wish to express their opposition to the Defendants' policy and actions surrounding the policy. The armband protest

- 9 -

symbolizes the students association for advancement of their common belief in the injustice of the Defendants' policy and actions.

The students' rights to express themselves in this manner are fundamental ones protected by the First Amendment by virtue of the Fourteenth Amendment. Palko v. Connecticut, 302 U.S. 319, 325 (1937). These fundamental rights and freedoms include the freedom of speech and the freedom "to engage in association for the advancement of beliefs and ideas." Gitlow v. New York, 268 U.S. 652, 666 (1925); NAACP v. Alabama ex rel. Patterson, 357 U.S. 449, 460 (1958).

Without an injunction, Plaintiffs will be forced to forego their fundamental rights to free expression or go without an education. Plaintiffs have a right to a free public education under the Arkansas Constitution. This right is established by Art. 14 § 1 (as amended by Amendment No. 53) to the Constitution of Arkansas, which states:

> Intelligence and virtue being safeguards of liberty and the bulwark of a free and good government, the State shall ever maintain a general, suitable and efficient system of free public schools and shall adopts all suitable means to secure to the people the advantages and opportunities of education. . . .

Plaintiffs have a statutory as well as constitutional right to attend public schools. Arkansas Code Ann. § 16-18-202(b)(1) provides:

> The public schools of any school district in this state shall be open and free through completion of the secondary program to all persons in this state between the ages of five (5) and twenty-one (21) years whose parents . . . reside within the school district and to all persons between those ages who have been legally transferred to the district for education purposes.

The statute clearly sets forth a right for students to attend public school. Not only do these students have a right to attend school, but they are required to attend by state statute compelling their attendance. Ark. Code Ann. § 6-18-201.

No amount of money damages will make these students whole for the loss of these fundamental rights and the discipline imposed upon them for their exercise of these rights. Free-speech restrictions are generally not compensable by money damages and are therefore irreparable. Elrod v. Burns, 427 U.S. 347, 373 (1976).[4] These students have a right to oppose what they feel is unlawful, unjust treatment by the Defendants. Defendants have punished the students wearing armbands, and Defendants have effectively chilled other students from wearing their armbands. These students are suffering and will suffer further actual, imminent, and irreparable harm absent an injunction. Discipline imposed upon these students for wearing armbands is affecting their grades, their ability to obtain a free, appropriate, public education, and their ability to participate in extra-curricular activities at WCSD.

### C. Balancing the Harms

The third Dataphase factor requires the Court to consider the potential impact that the requested injunction might have upon the Defendants and to

---

[4] The Defendants are each individually liable for violating a known constitutional right, and Plaintiffs intend to pursue monetary damages for pain, embarrassment, humiliation, and emotional distress.

balance that potential with the harms that the Plaintiffs could suffer should the request be denied.

Absent an injunction, these students will be coerced into silence or denied an education. The Defendants are unlikely to suffer any harm if the injunction is granted. Indeed, the only potential harm to the Defendants is that they will know that students disagree with their policy. The fact that Defendants will experience some discomfort or unpleasantness knowing that the students disagree with them is not a harm at all, and cannot weigh in Defendants' favor. In fact, this is precisely the sort of harm that the Defendants clearly must tolerate under Tinker. Id. at 509. The harms to the Plaintiffs are severe deprivations of fundamental First Amendment rights, and there will be no harm to Defendants should an injunction be entered which allows the students to wear their armbands.

## D. The Public Interest

The public interest in this case is clear. "The public has an unequivocal interest in protection of First Amendment freedoms for all its members." Chambers v. Babbitt, 145 F.Supp. 1068, 1072 (D.Minn. 2001). Moreover, "it is always in the public interest to prevent the violation of a party's constitutional rights." G & V Lounge, Inc. v. Mich. Liquor Control Comm'n, 23 F.3d 1071, 1079 (6th Cir.1994).

Defendants' actions are intended to discipline and produce a chilling effect on students for exercising fundamental constitutional rights. "State operated schools may not be enclaves of totalitarianism. School officials do not

- 12 -

possess absolute authority over their students." <u>Tinker</u>, at 511. Students cannot be "confined to the expression of those sentiments that are officially approved." <u>Id.</u>

The requested injunction will ensure that the time-honored students' rights to free expression are protected, and that they will not be subject to discipline for exercising those rights until the other issues in the case can be resolved. The requested injunction, if granted, would therefore favor the public interest.

## III. CONCLUSION

Each of the four factors weighs heavily in favor of the Plaintiffs. The Court should grant the plaintiffs' motion for a preliminary injunction and all other just and proper relief.

Respectfully submitted,

HOLLY DICKSON
Arkansas State Bar No. 98137
ACLU of Arkansas
904 West Second Street, Suite 1
Little Rock, AR 72201
(501) 374-2842
ATTORNEY FOR THE PLAINTIFFS