IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

CHRIS LOWRY, by, through, and with                                                     PLAINTIFFS
his Mother WENDY CROW;
COLTON DOUGAN, by, through, and with
his Father FRANK DOUGAN and
Mother LEIGH DOUGAN; and
MICHEAL JOSEPH, by, through, and with
his Mother HEIDI JOSEPH

v.                                     No. 5:06CV00262 JLH

WATSON CHAPEL SCHOOL DISTRICT, *et al*.                                             DEFENDANTS

**OPINION**

Following entry of a final decree, the plaintiffs made a timely application for fees and expenses pursuant to 42 U.S.C. § 1988(b) and Fed. R. Civ. P. 54(d)(2). Along with their application, the plaintiffs have submitted sworn statements from each of the lawyers who performed legal services for them in this case, itemizations of the time spent and the costs expended, and affidavits from a lawyer in each of the two markets in which plaintiffs' counsel practice. The defendants have filed a brief opposing the fee application.

**I.**

Lead counsel for the plaintiffs throughout the case was Holly Dickson, legal director and staff attorney for the American Civil Liberties Union of Arkansas. According to Dickson's declaration, she has been licensed to practice law in Arkansas since August 1998 and has considerable experience in litigating § 1983 cases. She states in her declaration that she redacted approximately 77.4 hours that were devoted to work on severable issues on which the plaintiffs did not prevail, leaving a total

of 177.7 hours for which the plaintiffs seek to recover at the rate of $175, for the total sum of $31,097.50 in fees.

In the early stages of this case, Dickson was assisted by John L. Burnett, who practices law in Little Rock, Arkansas. Burnett states in his declaration that he has been licensed to practice law in Arkansas since 1977. He too has considerable experience in litigating § 1983 cases. He states in his declaration that he devoted 18.95 hours to this case. The plaintiffs request compensation for Burnett's services at the rate of $250 per hour, for a total of $4,737.50.

A few months after the case began, Rebekah Kennedy, who practices law in Fort Smith, Arkansas, entered her appearance as co-counsel for the plaintiffs. According to her declaration, Kennedy was admitted to practice in Arkansas in 2004. Kennedy replaced Burnett as the primary lawyer assisting Dickson with the case, although the time records show that Dickson consulted with Burnett occasionally even after Kennedy became involved. Kennedy's declaration states that she devoted 168.6 hours after redacting 52.6 hours, 41.3 hours of which were devoted to severable issues on which plaintiffs did not prevail, 4.2 hours of which were devoted to appellate work, and 6.1 hours of which she did not consider billable. The plaintiffs ask for compensation for Kennedy's time at the rate of $125 per hour, which is her customary hourly rate. Kennedy's declaration requests the sum of $21,075, which is the sum of 168.6 hours times the rate of $125 per hour. However, in reply to the plaintiffs' response, Kennedy redacted an additional 11.8 hours on the ground that they may be severable. The revised request for Kennedy's services, therefore, would be 156.8 hours multiplied by $125 per hour for a total of $19,600.

In addition, a partner in Kennedy's firm, Brian Meadors, has submitted a declaration stating that he devoted .75 hours to the case, not including 2 hours that were devoted to work on severable

issues in which the plaintiffs did not prevail.  He states that his normal hourly rate is $200.  The plaintiffs ask for compensation for Meadors' services in the amount of $150.

In addition to the fees, the plaintiffs seek to recover expenses in the amount of $7,378.47 incurred by Dickson and $723.07 incurred by Kennedy.  In summary, the fees and expenses requested by the plaintiffs are as follows:

| Counsel | Fees | Expenses |
|---|---|---|
| Holly Dickson | $ 31,097.50 | $ 7,378.47 |
| John Burnett | $ 4,737.50 | none |
| Rebekah Kennedy | $ 19,600.00 | $ 723.07 |
| Brian Meadors | $ 150.00 | none |
| TOTAL | $ 55,585.00 | $ 8,101.54 |

Had the time devoted to severable issues on which the plaintiffs did not prevail been included, the fee request would have been increased by $13,545 for Dickson's services and $5,162.50 for Kennedy's services.  The total fee request then would have been $74,295.50.  The fee request of $55,585 represents approximately 75% of the total attorneys' fees that the plaintiffs would expend if they paid for all of the time that their lawyers have devoted to this case, before the appeal, at the hourly rates recited above.

The defendants have responded, requesting that the plaintiffs' application for fees and costs be denied or, in the alternative, reduced to a nominal amount.  The primary argument that the defendants advance is that the plaintiffs achieved such limited success in this case that they should not be permitted to recover attorneys' fees or, if they are permitted to recover attorneys' fees, those fees should be reduced to a nominal amount.

## II.

In their initial complaint, the plaintiffs alleged only one claim for relief, which was that the defendants had violated their right to free speech as guaranteed by the First and Fourteenth Amendments by subjecting the plaintiffs to discipline for wearing black armbands to school on October 6, 2006, in protest of the school's student apparel policy. The initial complaint named as defendants Watson Chapel School District; Charles Daniel Knight, superintendent of the school district, in his individual and official capacities; and the seven members of the school board in their individual capacities. Simultaneously with the filing of their initial complaint, the plaintiffs filed a motion for preliminary injunction asking that the Court enter a preliminary injunction to prevent the defendants from enforcing any discipline against them on account of the armband protest. After a hearing, the Court granted the motion for preliminary injunction in an order that states, in pertinent part, "The defendants are hereby preliminarily enjoined from disciplining any student who wears a band substantially similar to plaintiffs' Exhibit 13 around the wrist. Defendants are also preliminarily enjoined from using the events of October 6 as a factor in the progressive discipline of Chris Lowry, Colton Dougan, or Michael Joseph, or otherwise using the events of October 6 to the detriment of those three students until a decision is made on the merits."

Later, the plaintiffs filed an amended complaint. The amended complaint alleged four claims for relief. Count One alleged substantially the same claim for relief that had been alleged in the initial complaint, *i.e.*, that the defendants violated the plaintiffs' right to free speech as guaranteed by the First and Fourteenth Amendments when the defendants disciplined the plaintiffs for wearing black armbands to school to express their disagreement with the school's student apparel policy. Count Two alleged that the student apparel policy, itself, violated the plaintiffs' right to free speech

as guaranteed by the First and Fourteenth Amendments. Count Three alleged that the enforcement of the student apparel policy violated the plaintiffs' right to due process because the student apparel policy provided inadequate notice and inadequate procedural safeguards and because the policy had been arbitrarily and inconsistently enforced. Count Four alleged that the plaintiffs' rights to free speech as guaranteed by the First and Fourteenth Amendments were violated by the school's student literature policy, which at the time prohibited students from distributing any petitions or other printed matter not approved in advance by the principal. The prayer for relief in the amended complaint included requests for declaratory and injunctive relief for each count. In addition to the declaratory and injunctive relief, the plaintiffs sought nominal and compensatory damages both in the initial complaint and in the amended complaint. The amended complaint added as a defendant the principal of the junior high school, Henry Webb, in his individual and official capacities.

Before trial, the defendants filed a motion for partial summary judgment in which they argued that the school board members and both administrators were entitled to qualified immunity on all of the claims against them in their individual capacities. The Court granted that motion with respect to the seven members of the school board but denied it with respect to the two administrators, Knight and Webb. In ruling on the qualified immunity issue, the Court first addressed the merits of the constitutional questions as required by *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). The Court held that the student apparel policy contravenes no provision of the United States Constitution, but that the student literature policy in effect in the 2006-07 school year probably would be held by the Eighth Circuit to be unconstitutional because the policy gave no guidelines to the administrators as to which literature to approve and which literature to disapprove. The Court held that there was a genuine issue of material fact as to whether the discipline imposed

5

by Knight and Webb was imposed because the black armbands were used to express disagreement with school policy, so the Court denied the motion for summary judgment on the issue of qualified immunity with respect to Knight and Webb. The Court granted summary judgment on the issue of qualified immunity to each of the seven school board members.

On the morning of trial, the defendants stipulated that the discipline imposed upon the plaintiffs for wearing the black armbands on October 6, 2006, was imposed because the black armbands signified disagreement with the student apparel policy, and they also stipulated that the wearing of the black armbands caused no material disruption or substantial interference with school. In light of those stipulations, the Court held that the facts necessary to establish a violation of the plaintiffs' rights under the First and Fourteenth Amendments as interpreted in *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 89 S. Ct. 733, 21 L. Ed. 2d 731 (1969), were no longer in dispute, so the only factual issues for the jury to determine with regard to the discipline imposed for wearing the black armbands (Count One of the amended complaint) were damage issues. At the close of plaintiffs' case-in-chief, the Court entered judgment as a matter of law on Count Three of the amended complaint. The jury then answered interrogatories finding that the plaintiffs had not proven by a preponderance of the evidence that the discipline imposed on Chris Lowry for distributing a flyer was imposed because he was expressing disagreement with the student apparel policy. The jury awarded zero damages to each of the three plaintiffs. Although the plaintiffs had not requested punitive damages in their complaint or amended complaint, whether they were entitled to punitive damages against Knight and Webb was tried by implied consent, and the jury found in favor of Knight and Webb on that issue. The plaintiffs then filed a motion to amend the judgment

so as to award nominal damages of one dollar to each of the three plaintiffs. The Court granted that motion.

After the parties had briefed the issue of what equitable relief, if any, should be awarded, the Court entered a final decree. In the final decree, the Court permanently enjoined the defendants from disciplining any student for wearing a band substantially similar to the one at issue here around the wrist or any part of the arm not touching or covering any part of the student's school uniform. The Court found that the portion of the preliminary injunction that enjoined the defendants from using the events of October 6, 2006, in the progressive discipline of the three student-plaintiffs was moot and therefore dissolved that portion of the preliminary injunction. Although the Court found that the student literature policy in effect in 2006-07 would likely be held unconstitutional by the Eighth Circuit, a different policy was adopted for the 2007-08 school year, and the plaintiffs did not challenge the constitutionality of that policy, so no injunction was issued with respect to the student literature policy.

In short, the plaintiffs prevailed on their claim that the defendants[1] violated their right to free speech as guaranteed by the First and Fourteenth Amendments when discipline was imposed for wearing a black armband to school in protest of the school's student apparel policy. On that claim, the plaintiffs received nominal damages, a preliminary and permanent injunction preventing the

---

[1] Although we speak of defendants in the plural, the plaintiffs did not prevail on any of their individual capacity claims for monetary damages, so, in effect, they prevailed only against the Watson Chapel School District. *See Hutto v. Finney*, 437 U.S. 678, 700, 98 S. Ct. 2565, 2578, 57 L. Ed. 2d 522 (1978) (the governmental entity must bear the burden of a fee award under § 1988 when plaintiffs obtain injunctive relief against government officers); *Monell v. Dep't of Social Services*, 436 U.S. 658, 690 n.55, 98 S. Ct. 2018, 2035 n.55, 56 L. Ed. 2d 611 (1978) (a suit against a government official in his official capacity is in effect a suit against the entity).

defendants from disciplining any student for wearing a black armband such as the one at issue in this case, and a preliminary injunction preventing the defendants from using the protest in the school's progressive discipline with respect to these three students. The portion of the preliminary injunction relating to progressive discipline against the three student-plaintiffs was dissolved because subsequent events had rendered the issue moot. The plaintiffs prevailed in obtaining a declaration that the student literature policy in effect in the 2006-07 school year was unconstitutional. They did not obtain relief with respect to the policy adopted for the 2007-08 school year, though it appears that the new policy was adopted after the plaintiffs filed their amended complaint on February 22, 2007, presumably in response to the plaintiffs' criticisms of the older policy. *Cf. Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605, 121 S. Ct. 1835, 1840, 149 L. Ed. 2d 855 (2001) (rejecting the argument that a plaintiff is a "prevailing party" when the lawsuit results in a voluntary change in the defendant's conduct). The plaintiffs did not prevail on their claim that the student apparel policy was unconstitutional, nor did they prevail on their claim that the enforcement of the student apparel policy violated their right to due process.

**III.**

The Supreme Court has held, "If the plaintiff has succeeded on 'any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit,' the plaintiff has crossed the threshold to a fee award of some kind." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791-92, 109 S. Ct. 1486, 1493, 103 L. Ed. 2d 866 (1989) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978)). "Thus, at a minimum, to be considered a prevailing party within the meaning of § 1988, the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Id.*

> Where the plaintiff's success on a legal claim can be characterized as purely technical or *de minimis*, a district court would be justified in concluding that even the "generous formulation" we adopt today has not been satisfied. The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute. Where such a change has occurred, the degree of the plaintiff's overall success goes to the reasonableness of the award . . . not to the availability of a fee award *vel non*.

*Id*. at 792-93, 109 S. Ct. at 1493-94 (citations omitted).

The plaintiffs meet the test of *Texas State Teachers* for a fee award of some kind. They have materially altered the legal relationship of the parties by obtaining a preliminary and permanent injunction preventing the defendants from disciplining any student for wearing a black armband such as the black armbands for which discipline was imposed on October 6, 2006. They also obtained a preliminary injunction preventing the defendants from using the black armband protest against the three of them. That preliminary injunction was dissolved only because subsequent events had rendered the issue moot.

The issue, then, is not whether the plaintiffs are entitled to a fee award; clearly they are. The issue is the amount of the award.

## IV.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939, 76 L. Ed. 2d 40 (1983). The court should exclude from this initial fee calculation hours that were not reasonably expended. *Id*. at 434, 103 S. Ct. at 1939. This calculation is not the end of the inquiry because other considerations may lead the Court to adjust the fee upward or downward. *Id*., 103 S. Ct. at 1940. The Court also should consider the following factors:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. These factors derive directly from the American Bar Association Code of Professional Responsibility, Disciplinary Rule 2-106 (1980).

*Id*. at 429 n.3, 103 S. Ct. at 1937 n.3 (citation omitted). An important factor that may require the fee to be adjusted upward or downward is the results obtained.

> This factor is particularly crucial where a plaintiff is deemed prevailing even though he succeeded on only some of his claims for relief. In this situation two questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?
>
> In some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories. In such a suit, even where the claims are brought against the same defendants – often an institution and its officers . . . – counsel's work on one claim will be unrelated to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been expended in the pursuit of the ultimate result achieved. The congressional intent to limit awards to prevailing parties requires that these unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.
>
> It may well be that cases involving such unrelated claims are unlikely to arise with great frequency. Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended ono a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Id.* at 434-35, 103 S. Ct. at 1940 (internal quotations, citations, and footnotes omitted). There is no precise rule or formula for making these determinations. *Id.* at 436, 103 S. Ct. at 1941.

The defendants' argument relies heavily on *Farrar v. Hobby*, 506 U.S. 103, 113 S. Ct. 566, 121 L. Ed. 2d 494 (1992). In *Farrar*, the court held "that a plaintiff who wins nominal damages is a prevailing party under § 1988." *Id.* at 112, 113 S. Ct. at 573. Even so, the court said "When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all." *Id.* at 115, 113 S. Ct. at 575 (citation omitted). That statement, however, came in the context of a case the primary purpose of which was to recover monetary damages. The Supreme Court has also held:

> Because damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief. Rather, Congress made clear that it "intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases and *not be reduced because the rights involved may be nonpecuniary in nature*."

*City of Riverside v. Rivera*, 477 U.S. 561, 575, 106 S. Ct. 2686, 2695, 91 L. Ed. 2d 466 (1986) (citation omitted); *see also Wal-Mart Stores, Inc. v. Barton*, 223 F.3d 770, 773 (8th Cir. 2000).

Here, the plaintiffs obtained an injunction that benefitted all of the students in the Watson Chapel School District; they altered the legal relation between the school district and the students and did so in more than a merely technical way. The free speech right at issue is not measurable in monetary terms, and no one could reasonably think that the primary purpose of this action was the recovery of private damages. Although the plaintiffs did not prevail on all of their claims, for those claims on which they did prevail, their victory was more than technical.

The defendants apparently concede, or at least do not dispute, that the hourly rates charged by plaintiffs' lawyers are reasonable. Based upon the declarations filed with plaintiffs' application for fees and expenses and the Court's own knowledge of the prevailing hourly rates for lawyers practicing in Little Rock, Arkansas, and Fort Smith, Arkansas, the Court has no hesitation in finding that the hourly rates of the four lawyers who have performed legal services for the plaintiffs in this case are reasonable. The only specific time entries that the defendants attack as unreasonable were 11.8 hours recorded by Kennedy for discovery disputes concerning which the Court ruled in favor of the defendants and 2.7 hours listed on Kennedy's timesheets regarding a Freedom of Information Act request. In their reply, the plaintiffs have redacted 11.8 hours. Aside from the 11.8 hours devoted to discovery requests, which the plaintiffs have already redacted, and the 2.7 hours devoted to a Freedom of Information Act request, the defendants identify no specific time entries that they consider to be unreasonable. Instead, as noted above, their primary argument is that the fee award should be reduced because of the plaintiffs' lack of success in this case.

Although they do not attack other specific time entries, the defendants argue that none of the time that plaintiffs' counsel devoted to trial preparation should be compensated because, the defendants say, they (the defendants) have admitted from the beginning of this litigation that "Plaintiff[s] were punished for protesting the student apparel policy." (Def's. Br. in Resp. to Pl.'s App. 7, Nov. 30, 2007.) If so, not only did the plaintiffs fail to comprehend that the defendants "have admitted from the beginning" that students were disciplined because of the viewpoint they were expressing, so did the Court. In ruling on the motion for preliminary injunction, the Court said, "The defendants argue that *Tinker* is inapplicable here because, unlike the students in *Tinker*, the student plaintiffs were not punished because of the message their armbands conveyed." (Op. 6, Oct.

12

20, 2006.) Likewise, in ruling on the motion for partial summary judgment, the Court characterized the defendants' position as denying that students were punished because of the viewpoint expressed via the armbands. (Op. 14-15, Aug. 22, 2007.) The Court's understanding of the defendants' position was based on the defendants' statements in their pleadings and briefs, the testimony of Superintendent Knight and Assistant Superintendent Lincoln, and arguments of counsel. In paragraph 23 of their answer to the complaint, the defendants denied the portion of paragraph 22 of the complaint that alleged that the three student-plaintiffs were disciplined for wearing the armbands "to protest the school district's uniform policy and practices." (Answer ¶ 34; Comp. ¶ 22.) At the hearing on the motion for preliminary injunction, although Webb, who was not then a defendant, testified that students could not wear the black armbands because to do so "was a direct protest against the dress code policy" (Hr'g Tr. 129, Oct. 19, 2006), Knight denied under oath that students wearing black armbands were disciplined because of the viewpoint that they intended to express. He testified:

> Q. Now, what are the Watson Chapel school colors?
>
> A. Black and gold.
>
> Q. Mr. Knight, if a student had come to you on October 4, October 5, and said, "Mr. Knight, we really like the dress code, we want to support it, and there has been talk of this black arm protest, we want to wear a gold armband in support of the dress code policy," what would you have told that student?
>
> A. I'd tell them that's not going to be permitted, that would be a violation of the uniforms. I did have some kids come to me and say they were in support of it. I said, "That's your business."
>
> Q. If they'd worn a gold armband in support of the dress code, would they have received discipline?
>
> A. Yes.

13

>   Q.   The same as the ones that wore the black?
>
>   A.   Yes.

(Hr'g Tr. 159-60.) During closing argument at the preliminary injunction hearing, the defendants' lawyer adopted Knight's testimony as the position of the defendants:

> Mr. Knight told you if someone had come to him and said "We want to support the policy, we want to wear a gold armband to support it," Mr. Knight would have told them "Don't do it because you're going to get disciplined." It's viewpoint neutral.

(Hr'g Tr. 178-79.) In their brief in opposition to the motion for preliminary injunction, the defendants said, "In the instant case, the Watson Chapel School District did not forbid the wearing of armbands in order to suppress one particular opinion . . . ." (Br. in Supp. of Defs' Resp. to Mot. for Prelim. Inj. 9, Oct. 18, 2006.) When the defendants moved for partial summary judgment two months before trial they adopted that brief by reference. (Br. in Supp. of Mot. for Part. Summ. J. 5-6, July 12, 2007.) Not until the defendants filed their final brief less than a week before trial did it appear that they might concede that students were disciplined because of the viewpoint expressed by wearing the armbands, and even then there was no indication that they would also stipulate that the armband protest caused no material disruption of school. Had the defendants admitted at the beginning of the case that the students were disciplined because of the viewpoint they expressed by means of the black armbands and further admitted that wearing the black armbands caused no material disruption of school, much of the time spent conducting discovery, writing briefs, and preparing for trial could have been avoided. The Court cannot agree that fees should not be awarded for trial preparation time.

Following *Hensley*, the Court finds that the fee award should be reduced to some extent because the plaintiffs did not prevail on all of their claims for relief. The claims on which the

plaintiffs prevailed, however, were closely related to the claims on which they did not prevail. Three of the four claims were First Amendment claims that arose out of discipline imposed by the school district as a result of the black armband protest on October 6, 2006 (Count One, Count Two, and Count Four). The other claim (Count Three) was closely related because, although it was not a First Amendment claim and did not specifically arise from the black armband protest on October 6, 2006, it was nevertheless a claim regarding the discipline imposed for violations of the student apparel policy. For the claims on which the plaintiffs prevailed, their lawyers reasonably expended time for investigation, drafting a complaint, filing a brief in support of the motion for summary judgment, attending an evidentiary hearing, conducting discovery, filing a motion in limine and brief in support, filing a trial brief, attending the portion of the trial at which the defendants stipulated that the elements of *Tinker* were met, filing a brief in support of a motion to alter or amend the judgment, and filing a brief regarding what equitable relief should be granted. It is not possible to segregate every time entry that relates to those tasks from the time entries that do not, but obviously those tasks necessitated a substantial amount of legal work. Recognizing that there is no precise rule or formula for deciding what amount should be awarded in these circumstances, and recognizing that the plaintiffs have made a good faith effort to redact time that is devoted to severable issues on which they did not prevail, the Court has concluded that a reasonable fee award for the plaintiffs would be $37,500, which is approximately one-half of what the fees would be if all the time devoted to issues on which the plaintiffs did not prevail were included. In view of the time expended, the results obtained, the skill necessary to perform the legal services properly, the customary fee for such services, and the experience, reputation, and ability of the attorneys, and after considering the record

of this case as a whole, the Court has concluded that this amount represents a reasonable fee.[2]  *Cf. Warnock v. Archer*, 380 F.3d 1076 (8th Cir. 2004).  The out-of-pocket expenses in the amount of $8,101.54 appear to be reasonable.  Therefore, the Court will enter judgment in favor of the plaintiffs against Watson Chapel School District for fees and expenses in the total amount of $45,601.54.

## CONCLUSION

For the reasons stated, judgment for attorneys' fees and expenses will be entered in favor of plaintiffs against the Watson Chapel School District in the amount of $45,601.54 plus post-judgment interest.

DATED this 20th day of December, 2007.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE

---

[2] None of the other twelve factors listed in footnote 3 of the *Hensley* opinion seemed to bear on the decision in this case, so they are not mentioned.